UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: BRANDED OPERATIONS HOLDINGS, INC., Debtor. | |
| CHARLES ELLIOTT ANDERSON, Appellant, -against- PATRICK J. BARTELS, Plan Administrator, and EDGAR C. GENTLE, III, Trustee, Endo PI Trust, Appellees. | 25-CV-5045 (JGLC) **OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

This appeal comes before the Court from the Bankruptcy Court for the Southern District of New York. Appellant Charles Elliott Anderson, Jr., who is proceeding pro se, asks this Court to reverse three of the Bankruptcy Court's decisions: (1) an order denying his motion to modify the Debtors' Fourth Amended Plan of Reorganization, (2) an order denying his motion for reconsideration of the Bankruptcy Court's initial order, and (3) a subsequent order that denied his renewed attempt to alter the terms of the Fourth Amended Plan.

For the reasons stated herein, the Court denies each of these requests and AFFIRMS the Bankruptcy Court's decisions. The Court finds, among other things, that Appellant Anderson is bound by the confirmed Fourth Amended Plan, lacks standing and is not eligible to modify the Plan, and improperly attempts to fashion equitable relief out of the Bankruptcy Code. The Court further concludes that the Bankruptcy Court correctly exercised its discretion in denying

Appellant's Motion for Reconsideration and properly denied Appellant's subsequent motion. The Court also DENIES Appellant's additional motions, which he filed for the first time on appeal.

**BACKGROUND**

This case stems from a deeply troubling episode in this country's recent history: a devastating opioid epidemic that has left countless American families struggling and grieving while it enriched a small handful of businesses and profiteers. *See* Bob Fernandez & Craig R. McCoy, *Endo's End Around: How One of the Nation's Largest Opioid Makers Escaped a $7 Billion Federal Penalty*, ProPublica (Dec. 17, 2024), https://www.propublica.org/article/endo-settlement-opioids-justice-department ("News Article"); *see also* No. 22-22608, ECF No. 65. Appellant Charles Elliott Anderson, Jr. ("Appellant" or "Anderson"), who is proceeding pro se, is a self-described "surviving victim" of this epidemic. ECF No. 40 ("Appellant's Second Am. Opening Br." or "SAOB") at 1.[1]

On August 16, 2022, Endo International plc, a pharmaceutical company that has manufactured billions of opioid painkillers, and seventy-five of its affiliated Debtors filed for Chapter 11 bankruptcy in this District. *See* No. 22-22549, ECF No. 1; *see also* News Article. On May 25, 2023, and May 31, 2023, additional Debtors filed Chapter 11 petitions as well. *See* No. 22-22549, ECF Nos. 1954, 2136; *see also* No. 22-22608, ECF No. 69 (the "First Order") at 4. These cases are being administered jointly. First Order at 4.

The following year, after months of negotiations, the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered a Confirmation Order confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its

[1] Unless otherwise indicated, all references to ECF docket numbers refer to the above-captioned case, No. 25-CV-5045.

affiliated debtors (the "Fourth Amended Plan" or "Plan") on March 22, 2024. No. 22-22549, ECF No. 3960 (the "Confirmation Order"). Just over one month later, on April 23, 2024, the Fourth Amended Plan became effective. No. 22-22549, ECF No. 4212. Appellant Anderson did not object to the Plan or timely appeal the Confirmation Order. No. 22-22608, ECF No. 295 (the "January 5 Order") at 18.

The Plan called for the appointment of a Plan Administrator. No. 22-22549, ECF No. 3849 (the "Plan") § 5.7. Appellee Patrick J. Bartels, Jr., was appointed and remains the Plan Administrator. *See* ECF No. 50 ("Appellees' Br.") at 1. The Plan also called for the creation of a Personal Injury ("PI") Trust, set up to "expressly assume all liabilities and responsibility for all PI Opioid Claims," and the appointment of a PI Trustee. Plan § 6.8. Appellee Edgar C. Gentle, III, was appointed and remains the PI Trustee. *See* Appellees' Br. at 1.

Appellant Anderson voted to reject the Plan. No. 22-22608, ECF No. 277 at 62–92 (the "Ballot"). At the same time, he elected to "opt in" to granting certain releases such that he could "receive an additional payment." *Id.* at 68. By granting these releases (the "Release" or "Releases"), Anderson became entitled to an additional distribution payment four times that of the regular pro rata share of the PI Trust's proceeds. Plan § 4.14(d); *see* PI Trust Distribution Procedures ("PI TDP") § 4.3, available at https://endopitrust.com/pi-opioid-claims/. Appellant was what the Plan called a "Non-GUC Releasing Party" because his personal injury claim was a "PI Opioid Claim"—meaning he was subject to the "Non-GUC Releases" once he opted in. *See* Plan § 1.1.344. Pursuant to those releases, "to the fullest extent allowed by applicable law, each Non-GUC Releasing Party [like Appellant Anderson] is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Non-GUC Released Party from any and all Released Claims." Plan § 10.3(a).

After the Plan became effective, on May 6, 2024, the PI Trust received Anderson's PI Opioid Claim submission. No. 22-22608, ECF No. 60 ¶ 1; *see* No. 22-22608, ECF No. 277 at 51–57 ("PI Claim"). The PI Trust reviewed his submission and determined that it complied with all of the PI TDP requirements; Anderson's claim, the PI Trust concluded, was therefore compensable under the PI TDP framework. No. 22-22608, ECF No. 60 ¶ 2. On December 13, 2024, the PI Trust confirmed by email that Anderson had "an Allowed PI Opioid Claim." *Id.* ¶ 3; No. 22-22608, ECF No. 277 at 97. And by letter dated May 30, 2025, the PI Trustee informed Anderson that he was entitled to a pro rata share of $324 ($390 minus "administrative fees"), plus an additional award of $1,296 (four times the pro rata share) because he had opted into the Releases. No. 22-22608, ECF No. 277 at 98–99. In total, the PI Trustee's letter explained, Anderson's award would be $1,950 gross and $1,620 net in satisfaction of his claim. *Id.*

On February 18, 2025, before Anderson had received the PI Trustee's letter, he filed a motion seeking to modify the Fourth Amended Plan and requesting various forms of equitable relief. No. 22-22608, ECF No. 56 (the "First Motion"). In particular, Anderson sought to modify the Plan to accept his personal injury claim in the asserted amount of $5 million, direct full payment of that claim, and establish a new "Surviving Victims" trust that would monetize and distribute some of the Debtors' assets to pay his claim and the claims of similarly situated claimants. *Id.* After briefing, the Bankruptcy Court conducted a hearing on the motion, and on March 30, 2025, the Bankruptcy Court denied Anderson's motion. First Order.

Anderson then moved for reconsideration of the Bankruptcy Court's First Order. No. 22-22608, ECF No. 72 (the "Reconsideration Motion"). The Bankruptcy Court again conducted a hearing on the motion and, on May 25, 2025, denied the motion. No. 22-22608, ECF No. 124 (the "Reconsideration Order"). Anderson appealed that decision to this Court. *See* ECF No. 1.

At the same time, Anderson continued to litigate his claims in Bankruptcy Court. While the initial appeal remained pending, and after he had received the PI Trustees' letter informing him of his estimated award, Anderson filed another motion. No. 22-22608, ECF No. 277 (the "Second Motion," filed on November 12, 2025). Anderson again sought an order compelling the PI Trustee to pay his $5 million claim in full. *Id.* at 2. He also argued that the Releases were unconstitutional and unenforceable as applied to him, asked the Bankruptcy Court to stay his appeal before this Court, and requested an evidentiary hearing about the PI Trustee. *See id*. The Bankruptcy Court held a hearing on this motion and, on January 5, 2026, denied it as well. January 5 Order.

Appellant Anderson appealed once again. No. 22-22608, ECF No. 298. This appeal came before Judge Kenneth M. Karas in this District. *See* 26-CV-1033 (KMK). Appellant Anderson then moved to consolidate his first appeal—which was before the undersigned—and his second appeal, which was before Judge Karas. ECF No. 34. This Court granted Appellant's motion and consolidated both appeals. ECF No. 36. Those appeals are now before this Court.

After consolidating Appellant's appeals and granting multiple extensions, the Court directed Appellant to brief both of his appeals no later than March 9, 2026. ECF Nos. 35–36. Appellant timely filed his opening brief on March 6, 2026. ECF No. 38. That same day, Appellant then filed two almost identical amended opening briefs. ECF Nos. 39, 40. The Court construes the second of these amended opening briefs, the Second Amended Opening Brief ("SAOB"), as Appellant's operative brief. ECF No. 40. Later that month, Appellant filed a Supplemental Brief. ECF No. 42. Appellees filed their responsive brief on April 8, 2026. Appellees' Br. Appellant filed his Reply on April 21, 2026. ECF No. 55 ("Reply").

Appellant also filed several additional motions requesting further relief, ECF Nos. 43–48, 52, as well as letters relating to those motions, ECF Nos. 54, 56. The Court addresses these additional motions separately below. *See infra* Section IV.

Anderson's SAOB, meanwhile, is "narrowly focused" on three concerns: first, that the Bankruptcy Court improperly concluded that he lacked standing to seek to modify the Fourth Amended Plan; second, that the Bankruptcy Court failed to appropriately consider "newly discovered" evidence in its Reconsideration Opinion; and third, that the Bankruptcy Court gave "insufficient scrutiny [to] an incurable fiduciary conflict presented by the Plan Administrator's overlapping role and affiliations." SAOB at 4.

Due to these alleged defects in the Bankruptcy Court's rulings, Anderson asks this Court to reverse the First Order and Reconsideration Order, "permit targeted discovery and equitable relief," hold an evidentiary hearing, and remand the case to the Bankruptcy Court "to remedy manifest injustice."[2] SAOB at 4–5, 23–24.

For the reasons stated below, the Court denies Appellant's requests and affirms the Bankruptcy Court's three decisions.

## LEGAL STANDARD

District courts have appellate jurisdiction over final judgments of bankruptcy courts. 28 U.S.C. § 158(a). Findings of fact are reviewed for clear error, while conclusions of law are reviewed *de novo*. *In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997). Mixed questions of law and fact are reviewed *de novo*. *In re Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003). Rulings

[2] In his second appeal, Anderson also asked the Court to vacate the Bankruptcy Court's January 5 Order, stay a prior Bankruptcy Court order closing certain Endo Chapter 11 cases, compel production of additional evidence, and order an audit. No. 26-CV-1033, ECF No. 1 ("Second Appeal") at 6–7.

on whether to permit amendments to claims are reviewed for an abuse of discretion, *In re Integrated Res., Inc.*, 157 B.R. 66, 70 (S.D.N.Y. 1993), which occurs only when a court "applies legal standards incorrectly or relies upon clearly erroneous findings of fact, or proceeds on the basis of an erroneous view of the applicable law," *In re Harris*, 464 F.3d 263, 268 (2d Cir. 2006) (internal citation omitted).

## DISCUSSION

This section proceeds in four parts. First, the Court determines that the Bankruptcy Court properly decided the First Order: Anderson is bound by the confirmed Plan, lacks standing and is not eligible to modify the Plan, is barred from revoking the Confirmation Order, and improperly relies on Section 105(a) of the Bankruptcy Code to seek equitable relief. Second, the Court finds that the Bankruptcy Court correctly exercised its discretion to deny reconsideration. Specifically, Anderson failed to identify any controlling law, newly discovered evidence, or clear error to warrant reconsideration. Third, the Court concludes that the Bankruptcy Court's January 5 Order was properly decided. Specifically, *res judicata* precludes Anderson from challenging the Releases after he failed to object to the Plan or timely appeal the Confirmation Order; that Anderson incorrectly reads a recent Supreme Court case to support his claims; that Anderson consented to the Releases; and that Anderson's argument that the PI Trustee reduced his claim is unsupported by the evidence. Finally, the Court describes Appellant's numerous extraneous motions and additional arguments and concludes that it need not consider them.

### I. The Court Affirms the Bankruptcy Court's March 30, 2025 Decision

In its First Order, the Bankruptcy Court properly concluded that Appellant Anderson (1) remains bound by the confirmed Plan, (2) lacks standing and is not eligible to modify the Plan, (3) is barred from revoking the Confirmation Order, and (4) improperly relies on Section 105(a)

of the Bankruptcy Code to receive equitable relief that is unavailable under either the Plan or the Bankruptcy Code. *See generally* First Order.

First, Appellant Anderson remains bound by the confirmed Fourth Amended Plan because "[u]nder Section 1141 of the Bankruptcy Code, a confirmation plan 'bind[s] its debtors and creditors as to *all* the plan's provisions, and all related, property or non-property based claims which could have been litigated in the same cause of action.'" *In re Arcapita Bank B.S.C.(c)*, 520 B.R. 15, 21 (Bankr. S.D.N.Y. 2014) (quoting *Sure–Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 873 (2d Cir. 1991)). "The confirmation of a plan in a Chapter 11 proceeding is an event comparable to the entry of a final judgment in an ordinary civil litigation." *In re Am. Preferred Prescription, Inc.*, 255 F.3d 87, 92 (2d Cir. 2001). "Thus, in addition to the preclusive effects of Section 1141 of the Bankruptcy Code, the confirmation order serves as *res judicata* as to any issues that were or could have been raised in the confirmation proceedings." *In re Frontier Ins. Grp., Inc.*, 585 B.R. 685, 694 (Bankr. S.D.N.Y. 2018), *aff'd*, 598 B.R. 87 (S.D.N.Y. 2019) (cleaned up). This is so "whether or not [a] creditor . . . has accepted the plan." 11 U.S.C. § 1141(a).

Here, after months of negotiations, the Bankruptcy Court entered a Confirmation Order confirming the Fourth Amended Plan on March 22, 2024. Confirmation Order. Although Anderson voted against the Plan, the Plan nevertheless became effective just over one month later, on April 23, 2024. No. 22-22549, ECF No. 4212. The Bankruptcy Court expressly stated that the Plan satisfied the standards of Section 1129 of the Bankruptcy Code. Confirmation Order ¶ 2. And the Bankruptcy Court made clear that "any objections, responses, statements, reservation of rights, and comments in opposition to Confirmation . . . are overruled on the merits with prejudice pursuant to this Confirmation Order." *Id.* ¶ 3.

Moreover, the Plan itself states that "upon the occurrence of the Effective Date, the terms of this Plan, the Plan Supplement, and all other Plan Documents shall be immediately effective and enforceable and deemed binding upon . . . any and all holders of Claims or Interests." Plan § 14.1. That is the case "whether holders of such Claims or Interests have accepted or are presumed to have accepted or rejected or deemed to reject this Plan." *Id.* Accordingly, Anderson remains bound by the Plan—even though he voted against it.

Second, Anderson lacked standing to modify the Plan because Section 1127(b) of the Bankruptcy Code permits modification only if, among other requirements, the plan is modified by a proponent of a plan or by the reorganized debtor and if the modification occurs before the plan has been substantially consummated. 11 U.S.C. § 1127(b). Because Anderson is neither a proponent of the Plan nor the debtor, he lacks standing to modify the Plan. *See id.* The Bankruptcy Court also correctly noted that "it is undisputed that the Fourth Amended Plan has been substantially consummated"—making modification impossible, in any event. First Order at 14.

Anderson appears to argue that he has standing because he was injured by the First Order—namely, that his "pecuniary interest [was] affected by the order." SAOB at 18–19. But that misunderstands the Bankruptcy Court's reasoning. Anderson was not found to be lacking standing in terms of justiciability in federal court; he lacks standing to seek redress under Section 1127(b) of the Bankruptcy Code because he is not a proponent of the Plan and he is not the debtor. *See* First Order at 13–14.

Third, Anderson is barred from revoking the Confirmation Order. Under Section 1144 of the Bankruptcy Code, a party in interest must request to revoke the order within 180 days of the date the order was entered. 11 U.S.C. § 1144. If they do so, "after notice and a hearing, the court

may revoke such order if and only if such order was procured by fraud." *Id.* Here, Anderson moved to modify the Confirmation Order on February 18, 2025—333 days after the Confirmation Order was entered. No. 22-22608, ECF No. 56. Accordingly, if Anderson was moving to revoke—and not just to modify—the Confirmation Order, his motion to do so was time-barred.

The Bankruptcy Court also properly stated the law governing revocation, underscoring that relief under Section 1144 is discretionary. *See* First Order at 14; *In re Delta Air Lines, Inc.*, 386 B.R. 518, 532 (Bankr. S.D.N.Y. 2008) ("The importance of the auxiliary verb 'may' is that the decision of whether to revoke a confirmation order rests in the sound discretion of the court. Significantly, the court may decline to revoke the order of confirmation *even if* it finds that the order *was* procured by fraud."). The Bankruptcy Court went on to reason that because "Mr. Anderson does not contend that the Confirmation Order was procured by fraud," he was also barred from revoking the Confirmation Order on the merits. First Order at 14. However, this Court reads Anderson's motion differently. Anderson appears to claim fraud. He stresses that "ENDO has hidden an enormous amount of money, and shielded assets from creditors, and further [gave] hundreds of millions of dollars as "[b]onuses" to "[t]op-[t]ier" [c]ompany executives." First Motion at 6 (citing News Article). Even construing this allegation as one of fraud, though, the Bankruptcy Court was still well within its sound discretion to deny revocation and still properly found that Anderson's potential revocation claim is time-barred. As such, to the extent Anderson moved to revoke the Confirmation Order, he remains barred from doing so.

Finally, Anderson improperly relies on Section 105(a) of the Bankruptcy Code to attempt to fashion equitable relief that is unavailable under either the Plan or the Bankruptcy Code. As the Bankruptcy Court correctly explained, despite the "difficulties and challenges facing opioid

victims," Section 105(a) "limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code." First Order at 15 (quoting *In re Kalikow*, 602 F.3d 82, 96 (2d Cir. 2010)). Section 105(a) simply "empowers the bankruptcy court to exercise its equitable powers—where necessary or appropriate—to facilitate the implementation of other Bankruptcy Code provisions." *In re Kalikow*, 602 F.3d at 97 (internal citation and quotation marks omitted). The Bankruptcy Court was clear and correct when it stated that Section 105(a) "may not invade the ambit of [Bankruptcy Code Sections 1127, 1129, and 1144] and provide wider remedies than the statute allows." First Order at 16.

Accordingly, the Court affirms the Bankruptcy Court's First Order.

## II. The Court Affirms the Bankruptcy Court's May 25, 2025 Decision

The Bankruptcy Court was also correct to deny Appellant's Motion for Reconsideration pursuant to Local Bankruptcy Rule 9023. *See* Reconsideration Order. A motion for reconsideration in bankruptcy court is governed principally by Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59. *See In re Parade Place, LLC*, 508 B.R. 863, 868 (Bankr. S.D.N.Y. 2014) ("Local Bankruptcy Rule 9023–1(a) derives from Former Local Bankruptcy Rule 13(j) and is an adaptation of Civil Rule 6.3 of the Local District Rules," which applies the "identical" standard "applicable to motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e)."); *In re Enron Corp.*, 352 B.R. 363, 366 (Bankr. S.D.N.Y. 2006) (explaining that Bankruptcy Rule 9023 "incorporates" Federal Rule of Civil Procedure 59). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Posada*, 206 F. Supp. 3d 866, 867 (S.D.N.Y. 2016) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Accordingly, a motion for

reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite of the apple.'" *In re Parade Place*, 508 B.R. at 869 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

This standard "is strict, and [a motion for] reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (internal citation omitted). In other words, a court will generally only grant a motion for reconsideration if it has overlooked matters that "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

In his Motion for Reconsideration, Appellant Anderson failed to identify any change in controlling precedent or newly discovered evidence that would have altered the Bankruptcy Court's First Order. *See generally* Reconsideration Motion. Indeed, other than stating the Rule 59 standard, Anderson failed to cite to any case law whatsoever. *See id.* Instead, he merely rehashed his arguments from his First Motion. *See id.*

Anderson now argues that he presented newly discovered evidence that should have led the Bankruptcy Court to reverse its prior conclusions. *See* SAOB at 19–21. The first such evidence is a ProPublica news article that exposes "How One of the Nation's Largest Opioid Makers [Endo] Escaped a $7 Billion Federal Penalty." Reconsideration Motion at 5–6 (citing News Article). But, as the Bankruptcy Court properly underscored, Anderson referenced that very article in his First Motion. Reconsideration Order at 29. The News Article therefore does not constitute newly discovered evidence.

Anderson also highlights various exhibits he filed in an Addendum to his Reconsideration Motion. No. 22-22608, ECF No. 83 ("Addendum"). The Bankruptcy Court also properly assessed that these additional exhibits do not constitute newly discovered evidence. Reconsideration Order at 29–33. Newly discovered evidence "must be evidence that was truly newly discovered or could not have been found by due diligence." *Posada*, 206 F. Supp. 3d at 868 (internal citation and quotation marks omitted). "When newly discovered evidence is the basis for reconsideration, the proponent must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered." *In re Rezulin Prods. Liab. Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). "A motion to reconsider is not petitioner's opportunity to put forward evidence that he could have, but failed, to provide the Court when the Court initially considered the motion." *Posada*, 206 F. Supp. 3d at 868 (quoting *Muyet v. United States*, No. 03-CV-4247, 2009 WL 2568430, at *3 (S.D.N.Y. Aug. 19, 2009)). Relatedly, "newly discovered evidence" must also be "of facts that existed at the time of trial or other dispositive proceeding." *Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)).

As the Bankruptcy Court made clear, Appellant's Addendum exhibits were either created *after* the court's First Order—meaning they were not "of facts that existed at the time" of the court's ruling—or contained information that Anderson could have reasonably found through due diligence. *See* Reconsideration Order at 29–33. Perhaps most saliently, the Bankruptcy Court also correctly explained that none of these materials would have altered its ultimate conclusions. *See id.*

Appellant appears to argue that "extrinsic fraud" prevented him from "fully presenting [his] case," and that the Bankruptcy Court mischaracterized "many of [his] factual assertions as unsupported allegations." SAOB at 20. But Anderson presented much of the same evidence in his First Motion, and the Bankruptcy Court merely reasoned that Appellant's allegations did not constitute "newly discovered evidence" because the collection of emails, receipts, letters, and reports that Anderson presented as "new" evidence could have been reasonably ascertained with due diligence at an earlier date. *See* Reconsideration Order at 29–33. The Bankruptcy Court was therefore correct to conclude that none of Anderson's Addendum exhibits constituted newly discovered evidence. *See id.*

Because "Anderson [did] not point to any controlling law, new evidence, or clear error in the [First] Order" in support of his Motion for Reconsideration, he failed to meet the strict threshold required for the Bankruptcy Court to reconsider its prior decision. *Id.* at 25; *Analytical Survs., Inc.*, 684 F.3d at 52. Accordingly, the Court affirms the Bankruptcy Court's Reconsideration Order.

**III. The Court Affirms the Bankruptcy Court's January 5, 2026 Decision**

The Court also affirms the Bankruptcy Court's January 5 Order denying Appellant's Second Motion. In his Second Motion, Anderson repeats many of the same arguments he levied in his First Motion—in particular, he seeks full payment of his $5 million claim. *See generally* Second Motion. For the same reasons stated *supra*, however, the Court finds that Appellant is bound by the Plan. *See* Section I. The Bankruptcy Court thus properly disposed of Appellant's arguments requesting the immediate payment of his $5 million claim. *See id.*; January 5 Order at 13–14.

Appellant's Second Motion also advances new arguments. First, Anderson contends that

the Release is unconstitutional and unenforceable as applied to him. Second, he asks the Bankruptcy Court to conduct an evidentiary hearing into the PI Trustee's alleged bad faith in dealing with his claim. Third, Anderson asks the Bankruptcy Court to stay this appeal—but the Court need not address that issue because it is mooted by this decision.

As to Anderson's argument that the Release is unconstitutional and unenforceable, the Bankruptcy Court correctly denied Anderson's claims. As explained above, the "confirmation of a plan in a Chapter 11 proceeding is an event comparable to the entry of a final judgment in an ordinary civil litigation." *In re Am. Preferred Prescription, Inc.*, 255 F.3d at 92. "Thus, in addition to the preclusive effects of section 1141 of the Bankruptcy Code, the confirmation order serves as *res judicata* as to any issues that were or could have been raised in the confirmation proceedings." *In re Frontier Ins. Grp., Inc.*, 585 B.R. at 694 (cleaned up). This is the case "whether or not [a] creditor . . . has accepted the plan." 11 U.S.C. § 1141(a).

Although "the standard *res judicata* analysis can be an awkward fit when applied to bankruptcy proceedings," *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017), "a judicial order confirming a bankruptcy plan, like the Confirmed Plan here, 'represent[s] a binding determination of the rights and liabilities of the parties as ordained by the plan'" and serves as "an issue-preclusive final judgment on the merits," *Penberthy v. Chickering*, No. 15-CV-7613 (PAE), 2017 WL 176312, at *5 (S.D.N.Y. Jan. 13, 2017) (quoting *Celli v. First Nat'l Bank of N. New York (In re Layo)*, 460 F.3d 289, 293 (2d Cir. 2006)) (changes adopted). "The provisions of a confirmed Chapter 11 reorganization plan bind each and every creditor, regardless of whether the plan impairs the creditor's claim, and regardless of whether the creditor accepted the plan." *In re Bel Air Square Joint Venture*, 100 F.3d 942, at *2 (2d Cir. 1996). "The confirmation of a bankruptcy plan therefore bars relitigation not only of claims which were, or

could have been, brought and resolved at the point of confirmation," but "also precludes relitigation of any issues which could there have been resolved." *Penberthy*, 2017 WL 176312, at *5 (emphasis omitted).

Anderson does not dispute that he failed to object to the Plan or timely appeal the Confirmation Order. January 5 Order at 18; *see generally* SOAB. He even opted into the Releases. *See* No. 22-22608, ECF No. 277 at 68. Because it is well-settled, then, that "confirmed plans are *res judicata* to issues therein," Anderson is prevented from challenging the Releases at this later time. *Brown Media Corp.*, 854 F.3d at 161 (internal citation omitted).

Anderson's reliance on a recent Supreme Court case is also inapposite. *See* Second Motion at 13–14 (citing *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024)). Anderson argues that because he voted to reject the Plan and was "forced" to opt in to the Release "to receive a 4x multiplier," the Release violates *Harrington*'s "prohibition against binding non-consenting creditors." Second Motion at 14. In *Harrington*, the Supreme Court held—as the Bankruptcy Court acknowledges—that the Bankruptcy Code does not authorize nonconsensual third-party releases in Chapter 11 reorganization plans that discharge claims against non-debtors. *Harrington*, 603 U.S. at 227 (holding that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants"); *see* January 5 Order at 18–20.

But, as the Bankruptcy Court also correctly understood, the Supreme Court's *Harrington* decision is "a narrow one." *Harrington*, 603 U.S. at 206; *see* January 5 Order at 18–20. "Nothing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan," the Court explained. *Harrington*,

603 U.S. at 226. Additionally, the Supreme Court explicitly underlined, its decision does "not address whether our reading of the bankruptcy code would justify unwinding reorganization plans that have already become effective and been substantially consummated." *Id.*

Here, as the Bankruptcy Court correctly concluded, Anderson consented to the Release when he affirmatively opted in. *See* Ballot; January 5 Order at 19 ("That is what occurred here, as Movant elected to opt in to the Release, even as he voted to reject the Plan. The Release is consensual."). Although Anderson now argues that he "is a non-consenting creditor within the meaning of *Harrington*," Reply at 28, the case law could not be more clear: Opt-in releases are consensual, *see In re Purdue Pharma L.P.*, 675 B.R. 632, 672 (Bankr. S.D.N.Y. 2025). Even in the *Harrington* case itself, the parties amended the relevant Chapter 11 plan to comply with the Supreme Court's 2024 decision by "utiliz[ing] an opt-in mechanism, as '[a] clearer form of "consent" [could] hardly be imagined.'" *Id.* at 666 (quoting *In re Chassix Holdings, Inc.*, 533 B.R. 64, 80 (Bankr. S.D.N.Y. 2015)). "Only claimants that affirmatively opt into the releases provided to the Sackler Parties waive their rights to pursue such claims," the Bankruptcy Court explained, echoing the mechanism at play in this case. *Id.* at 672. "These sorts of consensual releases are specifically carved out of the *Harrington* decision." *Id.*; *see id.* at 663 (explaining that "any release here is entirely consistent with the Supreme Court's 2024 decision because the releases here are consensual, occurring only where a party chooses to opt into a release in exchange for the value provided by the Sackler Parties").[3]

The Confirmation Plan in this case was also already effective and had been substantially consummated by the time Appellant brought his Second Motion. No. 22-22549, ECF No. 4212;

[3] Nor does the Plan constitute a taking in violation of the Fifth Amendment. The Plan does not extinguish Appellant's claim. *See* No. 22-22608, ECF No. 277 at 98–99.

*see* Reconsideration Motion at 4 (recognizing that the Plan was substantially consummated). By its clear terms, then, the *Harrington* decision does not apply. *See Harrington*, 603 U.S. at 226. The Bankruptcy Court was right to reject Anderson's *Harrington*-based arguments.

As to Anderson's next argument—that the PI Trustee dealt with his claims in bad faith—the Court likewise affirms the Bankruptcy Court's analysis. As the Bankruptcy Court explained, Appellant's claim "stems from the trustee's alleged 'extrajudicial reduction of the claim and his refusal to provide a financial accounting.'" January 5 Order at 22 (quoting Second Motion at 6). But the PI Trustee's letter does not reduce—or even purport to reduce—Appellant's claim. *See* No. 22-22608, ECF No. 277 at 98–99. Instead, the PI Trustee's letter appropriately provides a financial accounting of how Appellant's award is calculated. *See id.*

Therefore, the Court affirms the Bankruptcy Court's January 5 Order.

## IV. The Court Need Not and Does Not Consider Appellant's Additional Arguments

Finally, Appellant advances several arguments in his Reply, Supplemental Brief, Second Appeal, and in numerous additional motions, *see* ECF Nos. 29, 44–48, 52; No. 26-CV-1033 (KMK), ECF No. 14, for the first time.

"The law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered." *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 485 (S.D.N.Y. 2017), *modified*, No. 12-MISC-381, 2017 WL 564676 (S.D.N.Y. Feb. 13, 2017) (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007)). "Generally, a court does not consider issues raised in a reply brief for the first time because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it." *Id.* (quoting *Sacchi v. Verizon Online LLC*, 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015)); *see also Playboy Enters., Inc. v. Dumas*, 960

F. Supp. 710, 720 n.7 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1347 (2d Cir. 1998) ("Arguments made for the first time in a reply brief need not be considered by a court.").

Similarly, "any arguments not raised in the bankruptcy court are considered waived; unless such waiver results in manifest injustice, the new arguments will not be considered on appeal." *In re Gordon*, 577 B.R. 38, 47 (Bankr. S.D.N.Y. 2017). This waiver applies because "[a]ppellants cannot 'change [their] strategy on appeal.'" *In re Markus*, 620 B.R. 31, 36 (S.D.N.Y. 2020) (quoting *In re Campbell*, 539 B.R. 66, 74 (Bankr. S.D.N.Y. 2015)). "[C]ircumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." *Id.* at 36–37 (quoting *U.S. ex rel. Maurice Keshner v. Nursing Personnel Home Care*, 794 F.3d 232, 234 (2d Cir. 2015)) (internal quotation marks omitted).

Here, then, "[t]he Court need not address [Appellant's additional] arguments because Appellant[] did not propound them in the Bankruptcy Court." *Id.* at 36. The vast majority of Appellant's arguments—from allegations of institutional bias to requests for judicial disqualification—were available to him when he appeared before the Bankruptcy Court. And he does not adequately explain why he did not raise these arguments earlier.

The rest of Appellant's arguments—extension or document requests that pertain to the instant appeal—are moot. Moreover, the Court has already denied Appellant's earlier requests to compel discovery; to the extent that his latest letters also seek to further supplement the record, the Court reminds him that "[d]iscovery at the appellate stage is improper." ECF No. 21 (citing *In re Residential Capital*, No. 13-CV-8317, ECF No. 14 at 1 (S.D.N.Y. Jan. 8, 2014) (finding that "[o]n appeal from an order of the bankruptcy court, the parties do not engage in discovery, and

thus any motion to compel discovery is not properly brought")). Appellant's extraneous motions and additional arguments are accordingly denied.

The Court does, however, address one of Appellant's latest requests—a request for pro bono counsel in his most recent letter to the Court. *See* ECF No. 56. There is no need for pro bono counsel in connection with this appeal: Appellant only made his request after submitting extensive arguments on his own and after full briefing on the issues was concluded. *See id.* As demonstrated above, the Court was also able to consider his arguments—and it is clear that the Bankruptcy Court's orders should be affirmed.

**CONCLUSION**

For the reasons stated above, the Bankruptcy Court's First Order, Reconsideration Order, and January 5 Order are AFFIRMED. Appellant Anderson's additional arguments and motions are DENIED. The Clerk of Court is respectfully directed to terminate ECF Nos. 29, 44, 45, 46, 47, 48, and 52, as well as ECF No. 14 in No. 26-CV-1033.

The Clerk of Court is respectfully directed to close this case.

Dated: July 14, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge